UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:  Patrick L. Voll and<br>Linda P. Voll,<br><br>                                  Debtors. | Case No. 13-31058<br>Chapter 13 |

**Memorandum-Decision and Order Awarding Debtors Actual Damages of $13,625 Against New York State Department of Taxation for Willful Violation of the Automatic Stay**

This matter is before the court on the motion of Patrick L. Voll and Linda P. Voll ("Debtors") for an order finding that the New York State Department of Taxation and Finance ("Tax Department" or "Department") willfully violated the automatic stay and seeking actual damages including attorneys' fees pursuant to 11 U.S.C. § 362(k). This court previously found that the Tax Department willfully violated the automatic stay and set the matter down for further hearing (Doc. 40). Debtors testified at the subsequent hearing on damages, at which James F. Selbach, Esq. appeared on behalf of Debtors and Assistant Attorney General Norman P. Fivel, Esq. appeared on behalf of the Tax Department. For the reasons that follow, the court denies Debtors' emotional distress damages but awards attorneys' fees of $13,625.00 as actual damages for the Tax Department's willful violation of the stay.

***Background Facts***

Debtors filed their chapter 13 petition on June 7, 2013. Prior to the filing and to satisfy a 2012 tax warrant, the Tax Department served an income execution on Mrs. Voll's employer, which resulted in the weekly garnishment of her wages. Although the Tax Department received prompt notice of the bankruptcy filing, its response to that notice was delayed and, as found by the court, inadequate to ensure the timely cessation of the garnishment. As a result, the garnishment of Mrs. Voll's paychecks continued through and until July 5. The average weekly deduction was $46.64, for a total amount deducted of $192.98.

1

Debtors filed their motion for sanctions on August 13, at which point the Tax Department was alerted to the fact that the garnishment had continued after Debtors' filing. The Department promptly returned the funds improperly deducted from Mrs. Voll's wages.[1] However, based upon the undisputed facts, the court concluded that the Tax Department failed in its affirmative duty to reverse the collection measures that it had put in place against the Debtors prepetition and found that the Department willfully violated the automatic stay. The court then set a hearing on damages.

*Debtors' Testimony*

Based upon the testimony offered by Patrick and Linda Voll, the court finds the following facts. Mrs. Voll has been employed for two years at Berry Plastics Corp., where she earns $9.00/hour. Previously, she worked for twenty-five years at Syracuse Label Co., earning $17.75/hour at the time she was laid off in May 2009. Mrs. Voll received some unemployment compensation during the two year period between these positions. Mr. Voll is presently unemployed. He worked for fifteen years at Paul DeLima Coffee before losing his job in May 2010. Mr. Voll has received social security disability since October 2010.

Both Debtors are patients of Dr. Joseph Cambareri. Dr. Cambareri has treated Mr. Voll for twenty years and began treating Mrs. Voll in 2012. Both Debtors see Dr. Cambareri every three months, and both are being treated for anxiety, stress and depression. The frequency of their appointments with Dr. Cambareri did not change after the filing. With a single exception in November 2013, Mrs. Voll has not had any change in her prescription medications since she began seeing Dr. Cambareri. Mr. Voll has been prescribed several medications over the years, but had only one change in his prescriptions in the twelve months prior to the hearing. That

_____

[1] A check was remitted to Debtors on August 26, 2013. The check was deposited September 5, 2013. Transcript of December 11, 2013 Evidentiary Hearing (hereinafter, "Tr.") at 2-3.

change was necessitated by an increase in his blood sugar levels. Except for Mrs. Voll's knee surgeon, neither Debtor sees any other medical professional or counselor for treatment.

Debtors have a 33-year-old son, who resided with them at the time of the bankruptcy filing. Their son did not contribute financially to the household. For years, Debtors' son has threatened and demanded money from Mr. Voll. At times, Mr. Voll would give his son money rather than pay bills. The testimony reflects that Mr. Voll was "terrified" because their son is "a big guy" who has "some anger issues." Tr. at 50. Debtors' son became physically abusive toward Mr. Voll beginning in June 2013. The abuse started as small slaps to the head and escalated to punches in the face and head. One day shortly before Thanksgiving 2013, Mrs. Voll came home and witnessed their son beating Mr. Voll, prompting her to call 911. After that incident, their son was removed from the home, arrested and placed in a psychiatric facility.

Mrs. Voll testified that the debt underlying the tax warrant arose because of a penalty charged for the early withdrawal of funds from her 401(k). Debtors were forced to cash-in Mrs. Voll's 401(k) in order to pay bills during the period in which her unemployment had run out. Debtors no longer have any retirement savings.

Mrs. Voll testified that prior to the bankruptcy she received numerous collections calls from creditors. These calls began right after she and Mr. Voll lost their jobs. The calls "drove [her] through the roof." Tr. at 9. She was so nervous that she did not want to answer the phone. The calls made her feel "degrade[ed]" Tr. at 9. Filing the case gave Mrs. Voll some relief from her stress. Tr. at 43.

Debtors noticed the garnishment in Mrs. Voll's first postpetition pay check and called Mr. Selbach to tell him of the deduction. Mr. Selbach asked Debtors to email him a copy of the paystub and indicated that "he would take care of it and . . . it would stop." Tr. at 68; *see also*

Tr. at 39. Each week that the garnishment continued, Mr. Voll emailed Mr. Selbach a copy of

Mrs. Voll's paystub.    Mrs. Voll could not recall how many postpetition paychecks were

garnished or when the garnishment ceased.    Although she knew the garnishment was

approximately $40.00 per week, she could not recall the total amount that was deducted.

> Asked how the continued garnishment affected her emotionally, Mrs. Voll testified:
>
> Well, it made me nervous not knowing that I didn't have the money and where we
> were going to get the money to pay bills and it just – I was – it just made me a
> nervous wreck not knowing that the money wasn't there and the people were
> going to call and start harassing me. And I – I just didn't want to deal with that. I
> – I just couldn't deal with it. I got to the point where I didn't answer the phone
> anymore. Tr. at 18.

Mrs. Voll testified that the postpetition garnishment increased her stress levels. Tr. at 43. Mr.

Voll testified that the garnishment "just added" to his anxiety and depression. Tr. at 52. Mr.

Voll did not blame the Tax Department for all his anxiety and depression.

Mrs. Voll had knee surgery on August 26, 2013. As a result of the surgery, she was out

of work for 13 weeks, which caused Debtors to struggle in making their plan and mortgage

payments.   Mrs. Voll thought that workers' compensation would pay her wages during her

convalescence, but it did not. Mr. Voll, who handles Debtors' finances, indicated that from the

filing until Mrs. Voll's surgery, Debtors were current on their postpetition bills.

Mrs. Voll acknowledged that many things caused her stress and upset her, including that

(i) she and her husband had lost their jobs in close proximity to each other; (ii) her current wages

were greatly reduced from her prior wages; (iii) her son did not contribute to the household; (iv)

she no longer had retirement savings; (v) they owed real property tax arrears; (vi) they were

facing foreclosure pre-bankruptcy; and (vii) she required knee surgery yet workers'

compensation did not cover her wages for her entire recovery.   Many of the things that caused

Mrs. Voll stress also caused Mr. Voll stress and anxiety.

For Mrs. Voll, emotional distress means the inability to concentrate or think due to the nervousness caused by persons "constantly nagging" her. Tr. at 20. She offered the following responses to questions propounded by Attorney Fivel:

Q.  How would you describe the—the level of stress in your household in the last twelve months?

A.  Very high. Very, very high.

Q.  Would you agree [with] the statement that there was a ton of stress at your household?

A.  Yes.

Q.  Would you agree with the statement that there was a lot of stress and heartache at your household?

A.  Yes.

Q.  Would you agree with the statement that there was a tremendous amount of emotional distress at your household?

A.  Yes.

Q.  And for how long a period of time would you say . . . [that] your household [was] in that condition regarding stress?

A.  About a year.

Q.  And can you explain reasons why you were under this kind of stress prior to filing bankruptcy?

A.  Money situations, situations at home that, you know, with my son. . . . Bill collectors calling and harassing and I didn't know what to tell them and they wouldn't take no for—you know they just kept nagging and making you feel like you're—you're a nothing, a nobody. You know, like you're trash.

. . .

Q.  Is it fair to say that you've been under constant stress?

A.  Yes.

Q.  Since well before you filed bankruptcy?

A.  Yes.

Q.  Was there any time in the last year that you could say you weren't under any stress?

A.  No.

Q.  And it is a significant amount of stress?

A.  Yes, it is.

Tr. at 20-21, 34-35.

For Mr. Voll, emotional distress means that he is "on edge [24/7]" and that it causes him

"a great deal of mental pain." Tr. at 53. In response to Attorney Fivel's questions, Mr. Voll

testified as follows:

> Q. How would you describe the level of emotional distress in your household over the last year?
>
> A. It—it's been high. I'm—I'm not going to sit here and—and downplay it. It's—it's been high. More so the last four to six months.
>
> Q. And why is that?
>
> A. Well, some is—some is from my son. Some is from the financial difficulties we're going through, again with the—the garnishment. We thought that once we filed bankruptcy that that was the end of that.
>
> . . .
>
> Q. Have you ever described the stress level in your—level in your household as being a ton of stress?
>
> A. Yes.
>
> Q. And have you described it as being a lot of stress and heartache?
>
> A. Yes.
>
> Q. Have you described it as being a tremendous amount of emotional distress?
>
> A. Yes.
>
> Q. And for how long a period of time would you say that that condition has been in your household?
>
> A. It's, again, about twelve months but more so over the past four to six months.

Tr. at 53-54, 55-56.

### *Damages for Willful Violation of the Automatic Stay*

Section 362(k)(1)[2] provides that "an individual injured by any willful violation of a stay

provided by this section shall recover actual damages, including costs and attorneys' fees, and, in

appropriate circumstances, may recover punitive damages." Where the court finds a willful

violation of the stay, an award for actual damages suffered as a result of the violation is

mandated. "[T]he party seeking damages . . . bears the burden of proving that damages were

actually incurred. Where no injury results from the violation . . . , an award of damages is clearly

---

[2] All sectional references are to the United States Bankruptcy Code at 11 U.S.C. §§ 101-1532.

inappropriate." *In re Sturman*, No. 10 Civ. 6725(RJS), 2011 WL 4472412, at *3 (S.D.N.Y. Sept. 27, 2011); *see In re Sullivan*, 367 B.R. 54, 64-65 (Bankr. N.D.N.Y. 2007); *In re Dominguez*, 312 B.R. 499, 508 (Bankr. S.D.N.Y. 2004).

Here, Debtors assert actual damages in the form of emotional distress and attorneys' fees; they do not seek a punitive award. Debtors acknowledge that the funds improperly garnished from Mrs. Voll's wages were returned shortly after the filing of their motion and do not claim any actual, pecuniary loss suffered as a result of the Tax Department's violation of the stay.

*Emotional Distress Damages*

Courts in this district have long recognized that—when appropriate—emotional distress damages are recoverable for willful violations of the stay. *See Sullivan*, 367 B.R. at 65 (citing the court's prior cases dating back to April 2000); *see also In re Beebe*, 435 B.R. 95, 99-100 (Bankr. N.D.N.Y. 2010); *In re Seniecle*, No. 06-34763, 2009 WL 2902939, at *2 (Bankr. N.D.N.Y April 20, 2009). Recovery for emotional distress damages is appropriate "only upon a showing of 'clear [and convincing] evidence to establish that significant harm occurred as a result of the violation.' " *Beebe*, 435 B.R. at 99 (quoting *In re Burkart*, No. 08-61077, 2010 WL 502945, at *4 (Bankr N.D.N.Y. Feb. 9, 2010)).

Significant emotional harm must be established by corroborating evidence,[3] or may be presumed where the circumstances surrounding the violation are sufficiently egregious. *See, e.g., Seniecle*, 2009 WL 2902939, at *2. The distress claimed must be more than "fleeting, inconsequential and medically insignificant." *In re Griffin*, 415 B.R. 64, 68 (Bankr. N.D.N.Y. 2009) (quoting *Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 250 (N.D. Ill. 2000)). Further, a debtor must establish a "causal connection" between the claimed distress and the creditor's

---

[3] Corroborating evidence may be in the form of expert medical testimony or testimony provided by family, friends or coworkers regarding the manifestations of the debtor's emotional distress. *See Dawson*, 390 F.3d at 1149-50.

violation such that the claimed distress is "distinct . . . from the anxiety and pressures inherent in the bankruptcy process." *Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1149 (9th Cir. 2004); *see Dean v. Carr (In re Dean)*, 490 B.R. 662, 669 (Bankr. M.D. Pa. 2013).

Debtors analogize themselves to the quintessential "eggshell plaintiff" and assert that their psychological and emotional conditions, which existed prepetition, were exacerbated by the garnishment. Thus, they claim that they are entitled to compensation for the increased emotional distress. Although they acknowledge that their damages may not be readily calculable, Debtors assert that their testimony established that the garnishment caused them emotional distress and, therefore, they should be compensated appropriately.

The Tax Department responds that Debtors have failed to prove that the violation caused a compensable level of emotional harm. It asserts that Debtors have not shown that they suffered significant emotional harm as a result of the garnishment, or, that they are entitled to a presumption of emotional harm. Furthermore, the Department argues that Debtors failed to prove a causal connection between the violation and any emotional distress distinct from the inherent stress involved in their bankruptcy.

At the outset, the court rejects the contention that the law does not require that emotional damages be significant in order to be compensable.[4] Counsel fails to provide any authority for this position, which is contrary to established case law. Debtors' counsel advocates a *per se* rule that whenever a court finds a violation of the stay, it must compensate the debtor for emotional distress, regardless of the degree of distress suffered or the quantum of proof offered in support.[5] It is clear from counsel's memoranda filed in this case that he takes issue with the law as applied

---

[4] *See* Debtors' reply memorandum (Doc. 72), at 4 ("The idea that emotional distress damages must be 'significant' to be recoverable under Section 362(k)(1) is made up out of whole cloth and is completely contrary to how our courts award damages.").

[5] Counsel advanced this same contention before Judge Davis of the court's Utica division, which was squarely rejected. *See Beebe*, 435 B.R. at 98-100.

to the recovery of emotional distress damages under § 362(k). Notwithstanding counsel's impassioned arguments, this court is not persuaded to depart from established precedent that the recovery of emotional distress damages under § 362(k) is appropriate only where debtors make a clear showing that they suffered significant emotional harm as a result of the alleged violation. *See generally C & W Asset Acquisition, LLC v. Feagins (In re Feagins)*, 439 B.R. 165, 178 (Bankr. D. Haw. 2010) (explaining that the heightened standard for recovery of emotional distress damages under § 362(k) arises from the concern that courts must guard against manufactured and frivolous claims).

Turning to the case at hand, Debtors make no claim that the circumstances surrounding the Tax Department's violation of the stay were egregious. Nor, would the court find egregious circumstances on these facts. *Cf., e.g., In re Pole*, No. 07-62628, 2008 WL 2433577, at *2 (Bankr. N.D.N.Y. June 12, 2008) (finding creditor's conduct "obvious[ly]" egregious where creditor, postpetition, filed a motion for summary judgment in a prepetition lawsuit and, thereafter, entered judgment against the debtor); *In re Carrigan*, 109 B.R. 167 (Bankr. W.D.N.C. 1989) (creditor arrived unexpectedly at debtor's residence, awoke debtor and his wife, loudly and obnoxiously demanded immediate payment of the debt and, upon departing, made an obscene gesture). The Tax Department's conduct was negligent at best. The violation resulted not from a specific action taken by the Tax Department, but from its failure to ensure that the garnishment ceased. The court does not minimize the violation nor its finding that the Tax Department's response to the notice of Debtors' filing was wholly inadequate. Instead, because the circumstances surrounding the violation were not egregious, Debtors are simply not entitled to a presumption of significant emotional harm. *See In re Burkart*, No. 08-61077, 2010 WL 502945, at *5 (Bankr N.D.N.Y. Feb. 9, 2010); *Seniecle*, 2009 WL 2902939, at *2-*3.

No corroborating evidence was offered to support Debtors' claim of emotional distress; instead, they rely on their testimony. Unquestionably, Debtors have and continue to suffer anxiety and stress due, among other things, to their financial circumstances. Nevertheless, Debtors' testimony, though credible, established that the stress caused by the garnishment was merely a proverbial drop in the bucket. Debtors did not experience any appreciable increased symptoms of their respective psychological conditions. Instead, Debtors testified—rather casually—that in regard to their stress and anxiety, the garnishment "just added to it." Tr. at 52, 43. Neither Debtor sought additional medical treatment in response to the garnishment, nor were the dosages of their prescriptions changed at a time proximately related to the garnishment.

Further, Debtors did not testify to any adverse collateral consequence that resulted from the garnishment, such that the court might infer emotional harm. *Cf. Fleet Mortg. Grp., Inc. v. Kaneb (In re Kaneb)*, 196 F.3d 265 (1st Cir. 1999) (secured creditor failed to timely dismiss its foreclosure suit ultimately resulting in debtor's neighbors socially ostracizing him); *In re Juliano*, No. 11-61418, 2012 WL 760312, at *1-*2 (Bankr. N.D.N.Y. March 2, 2012) (creditor automatically withdrew funds from debtors' bank accounts preventing debtors from purchasing groceries and obtaining prescription medications, and ultimately resulting in debtors' local pharmacy placing them on a "bounced check list"); *United States v. Flynn (In re Flynn)*, 185 B.R. 89 (S.D. Ga. 1995) (creditor froze debtor's bank account forcing debtor to cancel her son's birthday party). Although Mrs. Voll stated that the garnishment caused her to question where Debtors would find funds to pay their bills, Tr. at 18, Mr. Voll testified that until Mrs. Voll's surgery in late August, Debtors were current with their bills and plan payments. Tr. at 64-68.

The court finds that Debtors have not suffered significant emotional distress that was separate and distinct from that which arose more generally from the bankruptcy process or other

significant stressors in their lives. *See Dean*, 490 B.R. at 669; *Seniecle*, 2009 WL 2902939, at *3; *cf. Juliano*, 2012 WL 760312, at *2. Debtors' emotional turmoil appears largely the result of the circumstances surrounding Mrs. Voll's surgery—her subsequent period of convalescence and the financial strain that convalescence placed upon them—as well as those surrounding their son's conduct and his November 2013 arrest and hospitalization. These events which, in this court's opinion, were far more significant stressors in Debtors' lives, occurred after the garnishment had ceased and the improperly deducted funds were returned.

Accordingly, the court finds that Debtors have failed to establish clear and convincing evidence that they suffered significant emotional harm as a result of the Tax Department's violation of the stay. Thus, damages for emotional distress are denied.

*Attorneys' Fees and Costs*

Section 362(k) specifically authorizes the recovery of attorneys' fees and costs as "actual damages" by a debtor injured by a creditor's willful violation of the stay. To be recoverable, the fees and costs must be reasonable and necessary. *See In re Prusan*, 495 B.R. 203, 208 (Bankr. E.D.N.Y. 2010); *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 351 (Bankr. S.D.N.Y. 1998). "[R]easonable and necessary fees do not include unnecessary litigation costs." *Prusan*, 495 B.R. at 208 (quoting *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998)).

A debtor may recover attorneys' fees and costs even where the debtor has not suffered other compensable harm. In such instances, however, the court must review critically the requested fees to ensure that the court is not "rewarding an excessively litigious approach" to the prosecution of stay violations. *Seniecle*, 2009 WL 2902939, at *3; *see Burkart*, 2010 WL 502945, at *6. The court must balance two important guiding policies. On the one hand, the court must discourage willful violations of the stay. On the other, the court must avoid

encouraging debtors' counsel from incurring substantial fees "simply because those fees will be shifted to their adversaries." *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998).

Courts frequently apply the standards used in determining the reasonableness of compensation under § 330 in determining what fees and costs are reasonable and necessary in the prosecution of a § 362(k) cause of action. *See Lopez v. Consejo de Titulares del Condominio Carolina Court Apts. (In re Lopez)*, 405 B.R. 24, 30-33 (B.A.P. 1st Cir. 2009); *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002); *Watkins v. Guardian Loan Co. (In re Watkins)*, 240 B.R. 668, 679 (Bankr. E.D.N.Y. 1999); *Sucre*, 226 B.R at 351. The analysis begins with the "lodestar" calculation, *i.e.* a reasonable hourly rate multiplied by the number of hours reasonably expended. *Sucre*, 226 B.R. at 351. The lodestar calculation yields a presumptively reasonable fee that the court may—in its discretion—increase or decrease based upon various case-specific factors. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 188-90 (2d Cir. 2008).

The initial burden is upon debtor's counsel to show that the services for which compensation is sought were reasonable and necessary. *See In re Abel*, No. 95-11044, 2001 WL 36160133, at *3 (Bankr. D. Vt. May 29, 2001). "[A] party objecting to the amount of time spent on services has the burden of proving that too much time was spent, and cannot meet [that] burden merely by alleging a general dissatisfaction with the results." *Id.* Even where there are no specific objections to a fee request, "it is incumbent upon the bankruptcy court to conduct its own independent analysis of all applications for compensation." *Id.*

Debtors' counsel seeks attorneys' fees in the total amount of $16,830.00.[6] In support of the fee request, counsel provides contemporaneous time records that show the total expenditure of 61.2 hours on the matter (the "Time Records"). Counsel, who acknowledges that an award of

---

[6] No costs have been identified or requested.

attorneys' fee under § 362(k) is subject to a reasonableness determination, seeks to be compensated at his "customary" hourly rate of $275.00.

The Tax Department argues that counsel's fee request is unreasonable and should be significantly reduced, if not denied outright. The Tax Department asserts that counsel unnecessarily increased the costs of litigation, as evidenced by the choice to file a motion for sanctions as a first attempt to resolve the matter. The Tax Department also asserts that the total fees are unreasonable because they are disproportionate to the amount in controversy. The Department has not specifically challenged any of the legal services counsel provided, nor questioned counsel's customary hourly rate.

In regard to the Tax Department's first contention, the court notes that the Tax Department elected to oppose Debtors' motion on the basis that no violation of the automatic stay occurred, thereby requiring Debtors' counsel to prove the violation. It did not, in contrast, acknowledge the violation and limit its arguments to issues of mitigation of damages. Docs. 22, 36. Had it done so, the court would take more seriously the contention that a mere phone call was all that was reasonably necessary to resolve the matter. The position taken by the Department suggests that it would not have readily agreed to settle the matter by compensating Debtors, or their counsel, beyond returning the funds improperly deducted. Furthermore, the court notes that the Time Records indicate that counsel was involved in at least two attempts to settle the matter.[7] There is no evidence before the court to suggest that these settlement discussions were entered into in bad faith.

The Tax Department must share some responsibility for the costs incurred relative to the litigation on damages, insofar as it elected to conduct discovery. The Department has little cause

---

[7] An entry on October 22, 2013, indicates a phone call to Mr. Fivel "concerning possible settlement." An entry on December 3, 2013, indicates a phone call to Mr. Fivel regarding, inter alia, "possible settlement." Doc. 75.

13

to complain about attorneys' fees related to the depositions of the Debtors—which the court

notes are minimal[8]—as the depositions were requested by the Tax Department. The fact that

Debtors were not ultimately successful in proving their claim for emotional distress damages

does not negate the time that Debtors' counsel spent in responding to the Department's discovery

demands. *See In re Value City Holdings, Inc.*, 436 B.R. 300, 306 (Bankr. S.D.N.Y. 2010)

(awarding fees for services that notwithstanding the "ultimate outcome," were reasonable when

rendered); *Abel*, 2001 WL 36160133, at *4 (emphasizing that the reasonableness of an attorneys'

services are measured "from the perspective of the time that the services [a]re rendered rather

than utilizing '20–20' hindsight").

Finally, the Tax Department has failed to challenge any particular service rendered by

Mr. Selbach. Without doubt, debtors' attorneys are not at liberty to incur substantial legal fees

simply because those fees will be shifted pursuant to section 362(k). *Robinson*, 228 B.R. at 85.

However, creditors may not deny that a violation of the stay was willful then, after forcing the

debtor to litigate the matter, baldly claim that debtor-counsel's fees were unreasonable or

unnecessary. *See Duby v. United States (In re Duby)*, 451 B.R. 664, 677 (B.A.P. 1st Cir. 2011);

*Robinson*, 228 B.R. at 86-87. Accordingly, for these reasons, the court rejects the Tax

Department's generalized contention that the instant litigation was unnecessary. *See Abel*, 2001

WL 36160133, at *3, *5 (rejecting a challenge to an application for compensation because, in

part, the challenger "failed to articulate persuasively or identify specifically any tasks or charges

that were either duplicative, unnecessary or deficiently performed").

The court pauses to distinguish between the duty to ensure that debtors receive the

protection of the automatic stay—which lies squarely with the creditor—and the duty of debtors'

counsel to avoid needless litigation to remedy a violation after it has occurred. Neither debtors

---

[8] *See* chart, *infra*, p. 17.

14

nor their counsel have any affirmative duty to ensure that a creditor refrain from violating the stay. However, in those cases where the violative activity has ceased, debtors' counsel has an obligation to take only those steps reasonable and necessary to remedy the violation. What steps ultimately prove reasonable and necessary will depend upon the circumstances of the particular case. *See Beebe*, 435 B.R. at 102 ("The reasonableness and necessity of attorneys' fees and costs for the prosecution of a willful violation of the stay must be judged on a case by case basis.").

As to the Tax Department's second contention, it asserts that the requested fees are unreasonable because they are "grossly disproportionate" to damages suffered by the Debtors. Unquestionably, proportionality between an award of attorneys' fees and damages suffered is a factor for the court to consider in determining the reasonableness of fees; however, it is not dispositive. *See Lopez*, 405 B.R. at 33; *see also Duby*, 451 B.R. at 677; *Beebe*, 435 B.R. at 102; *cf. Roman*, 283 B.R. at 12-13 (discussing the reasonableness of attorneys' fees vis–à–vis debtors' obligation to mitigate damages). And, damages are assessable in part to serve as a deterrent to future violative behavior. Courts, including this court, have awarded attorneys' fees as damages for willful violations of the stay even where the debtors fail to prove any other compensable harm. *See Burkart*, 2010 WL 502945, at *6; *Seniecle*, 2009 WL 2902939, at *3. *But see Prusan*, 495 B.R. at 208.

The Tax Department opposed Debtors' motion at the outset and, after the court determined it had willfully violated the stay, proceeded to litigate the question of damages. Absent the truly baseless case, however, having prevailed in the denial of an award for emotional distress damages, a creditor cannot also then complain that debtors' counsel incurred fees and costs in attempting to prove debtors' case. *See Robinson*, 228 B.R. at 86-87 ("To deny fees incurred litigating the motion would inappropriately saddle a debtor or debtor's attorney with

15

such expenses; violators would be able to deny compensation to a debtor's counsel knowing that his costs to litigate the motion would greatly exceed his reimbursement."); *cf. Duby*, 451 B.R. at 677. In such instances, the creditor must tailor its arguments to specific challenges to the necessity and reasonableness of the services rendered by debtors' counsel. Accordingly, the court declines to find that Mr. Selbach's fees were unreasonable solely because counsel's fees are disproportionate to the damages Debtors were able to prove. *See Lopez*, 405 B.R. at 33.

Although it has rejected the Department's arguments, the court is mindful of its own responsibility to carefully examine the fees requested to test whether they were reasonable and necessary under the circumstances. *See Abel*, 2001 WL 36160133, at *3; *see also Beebe*, 435 B.R. at 102. For purposes of the lodestar calculation, the court will assume that $275.00 is a reasonable hourly rate for Mr. Selbach's services.[9] Of the time expended, however, there are four entries that could have been performed just as readily by a paralegal at a reduced billing rate. These include entries on November 6, 2013, emailing clients the date, time and location of depositions (.2 hours); November 25, 2013, inquiring as to obtaining medical records (.1 hour); and December 11, 2013, filing attorneys affirmation with the court (.1 hour). Thus, the court compenses the total time involved (.4 hours) at a paralegal rate of $100/hour, which results in a modest reduction of $70.00.

In determining the hours reasonably expended, the court examines the submitted time records and "must exclude hours that are excessive, redundant, or otherwise unnecessary" *Watkins*, 240 BR at 679. The Time Records are summarized in the chart below:

---

[9] Mr. Selbach is a solo practitioner, who is supported by a part-time paralegal. The court is familiar with Mr. Selbach's qualifications generally, *see Seniecle*, Case No. 06-34763, Doc. 131, as well as the prevailing rates for attorneys with similar experience that practice regularly before this court. Though he fails to provide evidence in support of the reasonableness of his rate, based upon his performance, the court finds no reason to reduce his requested rate. *Cf. Sucre*, 226 B.R. at 352 (finding counsel's performance deficient and reducing the claimed rate).

| Services Rendered (description by category) | Time Spent (in hours) | Percent of Total Time |
|---|---|---|
| (1)  Services Exclusive of Research/Drafting of Legal Memoranda<br><br>  -- Services prior to and including filing of the motion (1.9 hrs)<br>  -- Preparation/Attendance, Oct. 29 oral argument (2.0 hrs)<br>  -- Services related to deposition of Debtors (3.9 hrs)<br>  -- Preparation/Attendance, Dec. 11 evidentiary hearing (6.3 hrs)<br>  -- Misc. case management, rendered over 8½ months (8.4 hrs), including .4 hrs at reduced paralegal rate of $100/hr. | 22.5 | 36.8 % |
| (2)  Research/Drafting – Initial Memorandum arguing that the Tax Department willfully violated the stay (Doc. 35) | 14.6 | 23.9 % |
| (3)  Research/Drafting – Pre-trial Memorandum concerning emotional distress damages (Doc. 45) | 7.1 | 11.6 % |
| (4)  Research/Drafting – Post-hearing Memorandum (Doc. 70) | 4.3 | 7.0 % |
| (5)  Research/Drafting – Reply to the Tax Department's post-trial memorandum (Doc. 72) | 9.7 | 15.8 % |
| (6)  Drafting – Attorney's Affirmation in response to the Tax Department's post-trial memorandum (Doc. 73) | 3.0 | 4.9 % |
| **Totals** | 61.2 | 100 % |

Subject to the aforementioned reduction in the rate for certain services, the court takes no issue with Mr. Selbach's time spent relative to the following categories identified in the chart: (1) Services Exclusive of Research/Drafting of Legal Memoranda (22.5 hrs.); (2) Research/Drafting – Initial Memorandum arguing that the Tax Department willfully violated the stay (Doc. 35) (14.6 hrs.); and (4) Research/Drafting – Post-hearing Memorandum (Doc. 70) (4.3 hrs.). The court finds counsel's services for these categories to be reasonable, necessary and compensable.

The court will reduce the requested fees for time spent related to the following categories:

(3) Research/Drafting – Pre-trial Memorandum concerning emotional distress damages (Doc. 45) and (5) Research/Drafting – Reply to the Tax Department's post-trial memorandum (Doc. 72). The court finds that compensation for these hours is appropriate only to the extent that the briefing was focused on the contested issues before the court. These memoranda are dedicated, in substantial part, to lengthy discussions of issues upon which there is no reasonable dispute, *i.e.* that emotional damages and attorneys' fees are recoverable for a violation of the automatic stay, or to policy discussions that are unnecessary in light of the plain language of the statute, *i.e.* that "actual damages" includes attorneys' fees and costs incurred.[10] Further, a significant portion of the reply memorandum is almost a verbatim copy of the pre-trial memorandum, which is itself duplicative of similar memoranda filed by Mr. Selbach in other cases before this court. Accordingly, the court finds that a 50% reduction in the number of hours spent related to these memoranda is appropriate.[11] *See Watkins*, 240 BR at 679.

Lastly, the court shall exclude those hours related to Mr. Selbach's affirmation filed in response to the Tax Department's post-trial memorandum.[12] Although the court understands Mr. Selbach's desire to defend what he perceived to be an assault upon his professional reputation, Doc. 73, ¶ 2, the court finds that those services were not necessary to the prosecution of the motion and, therefore, will exclude the same.

---

[10] As a general principle, the court agrees with counsel that § 362(k) is a "fee shifting statute." Section 362(k) expressly provides that a debtor may recover attorneys' fees and costs. However, as one court has stated:

> [Section] 362(k) is not a typical fee-shifting statute. It " . . . does not provide for an award of attorney's fees. It provides that a debtor injured by a willful violation of the stay may recover attorney's fees to the extent that they are part of her damages." *In re Siharath*, 285 B.R. 299, 306 (Bankr. D. Minn. 2002) (discussing 11 U.S.C. § 362(h), the pre–2005 version of § 362(k)). "In other words, § 362([k]) provides for recovery of damages *including* attorney's fees, not damages *and* attorney's fees." *Id.* (emphasis in original).

*In re Thompson*, 426 B.R. 759, 765 (Bankr. N.D. Ill. 2010); *see also Roman*, 283 B.R. at 9-10.

[11] 7.1 hours (Doc. 45) + 9.7 hours (Doc. 72) ÷ 2 = 8.4 hours.

[12] Identified in the chart as: (6) Drafting – Attorney's Affirmation in response to the Tax Department's post-trial memorandum (Doc. 73).

After due consideration and as discussed above, the court finds that Mr. Selbach reasonably expended 49.8 hours in prosecution of this motion. The lodestar calculation (49.4 hrs. @ $275/hr. + .4 hrs. @ $100/hr.) thus yields a presumptively reasonable fee of $13,625.00. The court has considered the relevant case-specific factors[13] and does not find cause to further reduce or enhance the lodestar amount. Accordingly, the court finds that a reduced fee award of $13,625.00 is fair and reasonable under the circumstances of this case.

## *Conclusion*

This court recognizes the important deterrent effect that active enforcement of § 362(k) plays in keeping creditors mindful of the automatic stay provisions. The court stands ready to further the policies underlying § 362(k). In doing so, the court will adhere to the established heightened legal standard when emotional distress damages are claimed. In addition to the court's caveat to counsel to exercise discretion and good judgment in selecting those cases in which to bring a motion for sanctions for willful violation of the stay, in cases of non-egregious stay violations, the court shall expect counsel's arguments and proof to address the heightened standard if seeking recovery of emotional distress damages. Counsel's failure to do so may subject future fee requests to appropriate reductions.

Accordingly for the reasons cited above, the Tax Department is directed to pay actual damages of $13,625.00 to the Debtors for its willful violation of the stay.

So Ordered.

Dated: June 6, 2014
   Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge

---

[13] *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186 n.3 (listing the 12 *Johnson* factors); *see also Sucre*, 226 B.R. at 351-52.

19